IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NOT FOR PUBLICATION

|  |  |
|---|---|
| DEE MONBO, | ) |
| Plaintiff, | ) No. 24-cv-2139 |
| v. | ) Filed: June 16, 2025 |
| THE UNITED STATES, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action concerns Plaintiff Dee Monbo's challenge to the Federal Aviation Administration's ("FAA") decision to cancel a procurement solicitation. Ms. Monbo alleges that she submitted a joint proposal with Monbo Group International ("MGI") in response to the solicitation, and that the FAA's cancellation was both improper and prejudicial. Before the Court is the Government's Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 41(b) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the Court **GRANTS** the Government's Motion.

**I.   BACKGROUND**

On December 27, 2024, Ms. Monbo, who is proceeding pro se, filed this bid protest. *See* Pl.'s Compl., ECF No. 1. On January 15, 2025, Ms. Monbo filed an Amended Complaint. *See* ECF No. 8. In the Amended Complaint, Ms. Monbo describes herself as a "Federal Contractor" who "is an offeror of Project Manager services." *Id.* ¶ 4. She alleges that in "late 2023" the FAA issued Request for Proposal 6973GH-23-R-00147 ("Solicitation") related to a proposed contract for financial services. *Id.* ¶ 16. She asserts that her "joint proposal with Monbo Group

International . . . [was] the lowest priced proposal (i.e the winning bid)," *id.* ¶ 18, but the joint proposal did not result in an award because "the Agency improperly canceled the solicitation," *id.* ¶ 19. Ms. Monbo alleges that the FAA's cancelling the Solicitation violated Federal Acquisition Regulation ("FAR") 14.404-1(a)(1)'s compelling-reason requirement, and further that this "regulatory violation . . . prejudiced Plaintiff and MGI," who would have won the contract but for the improper cancellation. *Id.* ¶ 21. She further contends that she "had a substantial chance of being acquired [by MGI] to meet the needs of the Agency had the violation not occurred." *Id.* at 6 ("Grounds for Protest" ¶ 11) (alteration in original).

Ms. Monbo lists eleven grounds for protest, including that the FAA's cancellation of the Solicitation "violated the compelling-reason requirement," "violates FAR 15.206," "is improper," "was unreasonable," "was arbitrary and capricious," "lacks a rational basis," "is pretextual," is "conclusory and insufficiently documented," and "is contrary to law." *Id.* at 5–6. She requests injunctive relief in the form of an order "SETTING ASIDE as invalid the Agency's cancellation of all bids" for the solicitation in question, as well as reasonable fees and expenses. *Id.* at 7.

The Court held an initial status conference on January 30, 2025. On January 31, 2025, Ms. Monbo filed a Motion to Introduce Evidence of COFC Jurisdiction. *See* ECF No. 11. In her motion, Ms. Monbo argues that the Court has jurisdiction over her protest because the FAA's Office of Dispute Resolution for Acquisition ("ODRA") does not have jurisdiction. She also describes herself as "a proposed subcontractor of MGI," *id.* at 2, which is a different characterization than what she alleges in her Amended Complaint, wherein she purports to be a contractor who is jointly collaborating with MGI, *see* ECF No. 8 ¶¶ 4–10.

The Government moved to dismiss the Amended Complaint on February 7, 2025, arguing that (1) the Court does not have jurisdiction to hear Ms. Monbo's protest because protests of FAA

2

procurements must be brought before ODRA; (2) Ms. Monbo has no standing to sue because she did not submit a proposal in response to the Solicitation (only MGI did); and (3) Ms. Monbo cannot represent MGI as the real party in interest because she is not an attorney and is bringing this protest pro se.  *See* Mot. to Dismiss, ECF No. 12.

On April 8, 2025, Ms. Monbo filed her Response to the Government's Motion to Dismiss. *See* ECF No. 16.  Ms. Monbo's principal response is that the Court's jurisdiction over her claim has already been determined in a separate suit that she filed in the United States District Court for the District of Columbia ("District Court case").  Ms. Monbo requests that if the Court "chooses not to decide the controversy," the Court transfer her case to the United States District Court for the District of Columbia.  *Id.* at 4.  The Government did not file a reply.  The Motion is therefore ripe for decision.

## II.  LEGAL STANDARDS

### A.  Dismissal for Lack of Subject-Matter Jurisdiction

As a threshold matter, the Court must have subject-matter jurisdiction before reaching the merits of a plaintiff's claims.  *See* RCFC 12(b)(1), (h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998)).  Without subject-matter jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing" the case.  *Health Republic Ins. Co. v. United States*, 161 Fed. Cl. 510, 517 (2022) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).  The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"), provides the Court of Federal Claims with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

3

When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all the non-moving party's uncontroverted factual allegations and draws all reasonable inferences in the light most favorable to that party. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."). If jurisdictional facts are disputed, the non-moving party may not rest on mere allegations; instead, she must establish by a preponderance of evidence that the Court has jurisdiction over her claim. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002). The Court may consider "relevant evidence" outside the pleadings to resolve a factual dispute when the moving party "challenges the truth of the jurisdictional facts alleged in the complaint." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).

The Court liberally construes allegations in complaints filed by pro se litigants. *See Whiting v. United States*, 99 Fed. Cl. 13, 15 (2011); *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). Despite this leniency, pro se litigants must still meet the same jurisdictional requirements that apply to all litigants. *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). Regardless of pro se status, a plaintiff always bears the burden of establishing subject-matter jurisdiction. *See Estes*, 739 F.3d at 692 ; *Reynolds*, 846 F.2d at 748.

B.   **Dismissal for Failure to State a Claim**

A motion to dismiss for failure to state a claim upon which relief can be granted "is appropriate when the facts asserted by the claimant do not entitle [the claimant] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). To survive a motion to dismiss

4

under RCFC 12(b)(6), the complaint must contain facts, accepted as true, that are sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When resolving a Rule 12(b)(6) motion, the Court assumes all well-pled factual allegations as true and makes all reasonable inferences in favor of the non-movant. *See Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Although the Court "primarily consider[s] the allegations in the complaint, [it] may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (citation omitted).

In a bid protest, whether a plaintiff is an interested party within the meaning of 28 U.S.C. § 1491(b)(1) is a question of statutory standing that can be raised under RCFC 12(b)(6) at the pleadings stage. *See Acuity-CHS Middle E. LLC v. United States*, 173 Fed. Cl. 788, 796 (2024) (citing *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023)). To satisfy this standing requirement, a plaintiff must plead facts demonstrating that she is an "'actual or prospective bidder[ ] or offeror[ ] whose direct economic interest would be affected by the award of the contract or by failure to award the contract.'" *REV, LLC*, 91 F.4th 1156, 1163 (Fed. Cir. 2024) (alteration in original) (quoting *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)).

C.  **Dismissal under RCFC 41(b)**

The Court's rules provide that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, the court may dismiss on its own motion or the defendant may move to dismiss the action or any claim against it." RCFC 41(b). Such a dismissal is appropriate if a corporate plaintiff appears pro se in this Court, which violates RCFC 83.1(a)(3). *See RMA Eng'g*

*S.A.R.L. v. United States*, 130 Fed. Cl. 544, 544 (2017).

### III. DISCUSSION

There are three independent reasons for dismissal of Ms. Monbo's bid protest. First, the Court lacks jurisdiction over her claims because ODRA is the exclusive forum for adjudicating bid protests involving FAA procurements. Second, Ms. Monbo lacks statutory standing as an interested party. Finally, because MGI is the proper plaintiff in this protest, Ms. Monbo's prosecution of this case pro se violates RCFC 83.1(a)(3).

**A.     The Court Lacks Jurisdiction Over Protests to FAA Procurements.**

This case differs from bid protests over which the Court ordinarily has jurisdiction because this case challenges an FAA procurement. "When . . . a 'specific and comprehensive scheme for administrative and judicial review' is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (quoting *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 549–50 (Fed. Cir. 1994)). Here, as the Government points out, Congress has specifically provided an administrative avenue for challenging FAA procurements. *See* ECF No. 12 at 6. That avenue is ODRA.

In 1996, Congress passed legislation directing the FAA to "develop, implement, and periodically update an acquisition management system for the Administration that addresses the unique needs of the agency." Pub. L. No 104-50, § 348, 109 Stat. 436, 460 (1995) (codified at 49 U.S.C. § 40110(d)(1) (as amended)). Congress later directed that this system provide for, among other things, "the resolution of bid protests and contract disputes related thereto," Pub. L. No. 108-176, § 224(b), 117 Stat. 2490, 2528 (2003) (codified at 49 U.S.C. § 40110(d)(1)(B) (as amended)), and such disputes "shall be adjudicated by the Administrator through Dispute Resolution Officers or Special Masters of the Federal Aviation Administration Office of Dispute Resolution for

Acquisition [ODRA]," *id.* (codified at 49 U.S.C. § 40110(d)(4) (as amended)).  The "United States Court of Appeals for the District of Columbia Circuit or . . . the court of appeals of the United States for the circuit in which the [protestor] resides or has its principal place of business" possess jurisdiction to review ODRA decisions.  49 U.S.C. § 46110(a).  As FAA's implementing regulations explain, "ODRA is the FAA's exclusive forum acting on behalf of the Administrator, pursuant to the statutory authority granted by Public Law 108-176, Section 224, to provide dispute resolution services and to adjudicate matters within its jurisdiction."  14 C.F.R. § 17.3(q) (2011); *see Unisys Corp. v. United States*, 90 Fed. Cl. 510, 512 (2009) (describing ODRA as having "*exclusive* jurisdiction over FAA bid protests") (emphasis added)).  The solicitation at issue here explicitly incorporated this regulatory provision, putting prospective bidders on notice that any protest would have to be brought before ODRA.  *See* App. to Gov't's Mot. to Dismiss ("App.") at 70, ECF No. 12-1.

   Ms. Monbo responds to this argument in two ways.  First, forecasting that jurisdiction might be an issue, Ms. Monbo preemptively addresses the ODRA issue in her Motion to Introduce Evidence of COFC Jurisdiction, which was filed before the Government moved to dismiss the case.  *See* ECF No. 11.  In that motion, Ms. Monbo asserts that ODRA does not have jurisdiction over her case because, as a proposed subcontractor, she is not an "interested party," and being an interested party is a requirement to bring a protest under the FAA's rules.  *See id.* at 1.  She argues that because ODRA does not have jurisdiction, this Court must.  *See id.* at 2.  However, that one forum does not have jurisdiction over a plaintiff's claim does not mean that another forum automatically does.  In fact, Ms. Monbo's claim that she is a subcontractor also forecloses her ability to litigate a bid protest in this Court.  *See Acuity-CHS*, 173 Fed. Cl. at 799 ("Courts have consistently held that subcontractors do not have standing to bring a bid protest [in the Court of

7

Federal Claims] as an 'interested party.'" (quoting *Am. Fed'n of Gov't Emps. v. United States* (*AFGE*), 258 F.3d 1294, 1302 (Fed. Cir. 2001))). Thus, Ms. Monbo's first counterargument fails.

Second, Ms. Monbo asserts that this case belongs in this Court because the United States District Court for the District of Columbia concluded in a separate, unrelated action that "if Monbo's suit belongs in any federal court, it belongs in the Court of Federal Claims." ECF No. 16 at 2–3 (quoting *Monbo v. United States*, No. CV 23-2425 (JEB), 2023 WL 8354885, at *3 (D.D.C. Dec. 1, 2023)). This argument also misses the mark. The District Court case involved Ms. Monbo's protest of an Air Force procurement. The Air Force is an agency under the Department of Defense. Unlike the FAA, challenges to the Department of Defense's procurements are not subject to review by ODRA under the FAA's dispute-resolution procedures. The distinction is dispositive because the District Court held only that the particular type of claim alleged by Ms. Monbo (*i.e.*, a bid protest of an Air Force procurement) was within the exclusive subject-matter jurisdiction of this Court. *Monbo*, 2023 WL 8354885, at *2. It did not have cause to determine whether an alternate administrative-review scheme like ODRA displaced this Court's bid protest jurisdiction.[1]

Accordingly, the Court lacks jurisdiction over Ms. Monbo's bid protest because such a protest must be brought before ODRA. This alone is enough to grant the Government's Motion under RCFC 12(b)(1).

---

[1] Ms. Monbo further asserts that the Government is barred from arguing that the Court does not have jurisdiction because in the District Court case, the Government argued that Ms. Monbo's other, unrelated bid protest belonged in the Court of Federal Claims. *See* ECF No. 16 at 3. While the Court appreciates Ms. Monbo's frustration with what she calls the Government's "shifting positions" as to jurisdiction, *id.*, the Government's position in the other case, which concerned an entirely different solicitation issued by a different agency, does not preclude the Government from making a different jurisdictional argument based on the facts in the present case.

### B. Ms. Monbo Fails to State a Claim Because She Lacks Statutory Standing.

Even assuming the Court has jurisdiction, the Amended Complaint fails to state a claim on which relief can be granted because Ms. Monbo has not demonstrated that she is an interested party and thus has statutory standing to bring her claim. MGI, not Ms. Monbo, submitted the offer in response to the Solicitation.[2]

Where a protest challenges a solicitation or contract award, an interested party within the meaning of the Tucker Act must be "an actual or prospective bidder whose direct economic interest would be affected by the award of the contract." *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012). An actual bidder is one who in fact submitted a proposal, whereas a prospective bidder is one who is "*expecting* to submit an offer prior to the closing date of the solicitation." *Rex Serv.*, 448 F.3d at 1308 (quotation omitted). "To prove a direct economic interest, a party must show that it had a 'substantial chance' of winning the contract." *Digitalis*, 664 F.3d at 1384 (quoting *Rex Serv.*, 448 F.3d at 1308)).

As the Government correctly points out, "the proposal clearly shows that the offer was submitted by Monbo Group rather than [Ms. Monbo] herself as an individual." ECF No. 12 at 8;

---

[2] The Government raises a similar standing argument under the rubric of Article III. *See* ECF No. 12 at 7 ("Ms. Monbo did not submit her own offer to the solicitation and, therefore, has suffered no injury in fact."). Article III standing is less stringent than the statutory standing requirement in bid protests, and thus in rare cases a claimant who was not an actual or prospective offeror may satisfy the former standard but not the latter. *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 267 n.22 (2024). Given the allegations that Ms. Monbo intended to perform work on the proposed contract in some capacity as an alleged individual contractor—separate from her relationship with MGI—it is difficult to resolve the jurisdictional standing question on the pleadings without further factual development. *See* ECF No. 8 ¶ 11 (alleging lost profits from work under the Solicitation and Joint Collaboration Agreement with MGI); *see* ECF No. 12 at 8 (arguing that Ms. Monbo's subcontractor allegation is "unsubstantiated"). Since the Court has already ruled that it lacks jurisdiction because of the FAA's alternate dispute-resolution scheme, it will apply the statutory standing analysis to the Government's argument to find an alternative ground for dismissal.

*see* App. 78, 80 (MGI Price Proposal).³  The alleged relationship between Ms. Monbo and MGI is hazy in the Amended Complaint.  Ms. Monbo represents that "Dee Monbo and MGI are two separate federal contractors," ECF No. 8 ¶ 5, that work together and share resources "through collaborative partnership arrangements," *id.* ¶ 9.  She alleges that she and MGI are "responsible for profits, losses, costs, and risks associated with both (a) their collaborative partnership and (b) Solicitation No. 6973GH-23-R-00147." *Id.* ¶ 7.  According to Ms. Monbo, she "submitted a ***joint proposal*** with MGI." *Id.* ¶ 10 (referring to the price proposal cover page).  On their face, these allegations could suggest that Ms. Monbo was an actual offeror.

However, the bid documents tell a different story.  And "in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails." *Allen Eng'g Contractor, Inc. v. United States*, 115 Fed. Cl. 457, 464 (2014), *aff'd*, 611 F. App'x 701 (Fed. Cir. 2015); *see Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("allegations that contradict matters properly subject to judicial notice or by exhibit" need not be accepted as true under the Rule 12(b)(6) standard of review).  For instance, the cover page of the proposal bears MGI's corporate logo and states that the proposal is being submitted by Ms. Monbo on behalf of MGI.  *See* App. 78.  The cover letter to the proposal, which was signed by Ms. Monbo as "Partner – Government Services" at MGI, further reads: "Monbo Group International (MGI) is pleased to submit this price proposal."  App. 80.  All references to Ms. Monbo in the proposal refer to her by her title as "Partner" at MGI or in her capacity as an authorized representative of MGI.  *See* App. 86, 92–96, 99, 107–08.  But submitting proposals on a company's behalf does not make an individual an actual bidder.  *See Quoquoi v. United States*,

---

³ Although Ms. Monbo did not attach the proposal to her Amended Complaint, it is incorporated by reference throughout and is integral to her claim.  *See* ECF No. 8 ¶¶ 1, 10, 12, 18–19; *id.* at 5–6 ("Grounds for Protest" ¶¶ 5, 11); *see also A&D Auto Sales*, 748 F.3d at 1147.

No. 19-661, 2019 WL 4054107, at *3 (Fed. Cl. Aug. 26, 2019). Simply put, MGI alone appears on the price proposal. Ms. Monbo merely communicated on behalf of MGI as its representative. Thus, it is clear from the proposal that MGI—not Ms. Monbo—was the offeror.

The Joint Collaboration Agreement that Ms. Monbo attached to her Amended Complaint does nothing to support her joint proposal allegation. *See* ECF No. 8 at 19–20. The agreement, titled: "Joint Collaboration Agreement Between Monbo Group International, Ltd. and Dee Monbo (A Sole Proprietor)" is mostly redacted. *See id.* at 19. The agreement shows that she and MGI share the same business address. *See id.* It also includes a section called "Percentage Ownership," which purportedly describes "[e]ach Collaborator's respective interest in the Joint Collaboration." *Id.* The percentage ownership amounts are redacted, as is the entire section headed "Purpose." *Id.* In what is left unredacted, there is no reference to the FAA solicitation at issue, and the agreement appears to have been executed several years before the submission of the proposal. *Id.* The agreement therefore fails to establish that a proposal submitted in the name of MGI should be considered a joint proposal submitted by MGI and Ms. Monbo, either generally speaking or specifically with respect to the Solicitation. Again, the proposal at issue identifies MGI, not Ms. Monbo or any collaboration between the two, as the actual offeror.

Furthermore, Ms. Monbo's alternative theory (from her Motion to Introduce Evidence) that she is a subcontractor of MGI cannot save her claim. *See* ECF No. 11 at 2. As noted above, "a subcontractor to an offeror in [a] procurement is not itself an actual or prospective offeror, and thus not an interested party." *Eagle Design & Mgmt., Inc. v. United States*, 62 Fed. Cl. 106, 109 (2004); *see Superior Waste Mgmt.*, 169 Fed. Cl. at 267 n.22; *see also Acuity-CHS*, 173 Fed. Cl. at 799.

Similarly, Ms. Monbo has not sufficiently alleged that she can satisfy the interested-party

11

standard notwithstanding that she did not submit an offer to the Solicitation. Ms. Monbo alleges in her Amended Complaint that the cancellation of the Solicitation harmed her because she "had a substantial chance of being acquired [by MGI] to meet the needs of the Agency had the violation not occurred."[4] ECF No. 8 at 6 ("Grounds for Protest" ¶ 11) (alteration in original). This is a direct reference, albeit misplaced, to the decision on appeal in *Percipient.ai v. United States*, 104 F.4th 839, 853 (Fed. Cir. 2024). In a per curiam order, the United States Court of Appeals for the Federal Circuit vacated the panel's decision in that case and granted rehearing en banc. *See Percipient.ai. v. United States*, 121 F.4th 1311 (Fed. Cir. 2024). As of the date of this opinion, the Federal Circuit has yet to issue an opinion on rehearing. Regardless, the claim in *Percipient.ai* is distinguishable. There, the protestor, who was not an actual or prospective offeror, brought a claim unrelated to a contract solicitation or contract award. *Percipient.ai*, 104 F.4th at 855. Rather, it alleged a statutory violation of 10 U.S.C. § 3453 "in connection with a procurement" solely under the third prong of § 1491(b)(1). *See id.* at 855. In that specific context, the Court found that a claimant qualified as an interested party "if it [was] an offeror of a commercial product or commercial service that had a substantial chance of being acquired to meet the needs of the agency had the violation not occurred." *Id.* at 853. Not only is the statute at issue in *Percipient.ai* not at issue here, Ms. Monbo's claim—unlike Percipient.ai's—directly challenges an agency action with respect to a solicitation. The standard definition of interested party, which requires the protestor to be an actual or prospective bidder, therefore applies. *See id.* (citing *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1356, 1359–60 (Fed. Cir. 2009); *AFGE*, 258 F.3d at 1302).

In response to the Government's Motion, Ms. Monbo argues that the law of the case, res

---

[4] The Court is unclear as to what Ms. Monbo suggests when she represents that she, as an individual, will be acquired by MGI.

judicata, collateral estoppel, and judicial estoppel doctrines bar the Government from arguing that she is not an interested party. *See* ECF No. 16 at 3. According to Ms. Monbo, because the decision in the District Court case suggested that she could potentially be considered an interested party, she must be an interested party in this case as well. *See id.* There are several flaws in this reasoning. First, the District Court explicitly noted that it was not deciding whether Ms. Monbo was an interested party in that case; it merely suggested that she could be considered an interested party under another district court's broad interpretation of statutory standing.[5] *See Monbo*, 2023 WL 8354885, at *3.

Second, even if the District Court *had* held that Ms. Monbo was an interested party in that case, the holding is not binding in this case under any of the doctrines Ms. Monbo cites. The law of the case doctrine applies where an appellate court has decided an issue in a case. Under that circumstance, the determination is binding on a trial court in any subsequent litigation involving the same facts. *See Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1335 (Fed. Cir. 2004). The doctrine does not bind a trial court in one action to determinations made by another trial court in a distinct legal action.

Res judicata prevents a party from re-litigating a claim that has already been litigated where (1) there was a final judgment on the merits; (2) the parties were identical in both suits; and (3) the second claim is based on the same set of transactional facts as the first. *See Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322,

---

[5] The District Court explained that: "At least one court, moreover, has concluded that ADRA's 'interested party' language describes plaintiffs pursuing 'the full range of APA claims previously pursued under [a predecessor] doctrine—including claims by a plaintiff who is not a disappointed bidder . . . but who possesses standing under the broader standing rule of § 702 of the APA,' an interpretation under which Monbo is certainly an 'interested party.'" *Monbo*, 2023 WL 8354885, at *3 (citing *Validata Chem. Servs. v. U.S. Dep't of Energy*, 169 F. Supp. 3d 69, 82 (D.D.C. 2016)).

326 (1979)); *see also Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000)). Res judicata cannot apply here because the District Court dismissed the case on jurisdictional grounds without reaching the merits, and both the parties and the facts were different in that case.

Similarly, collateral estoppel, also known as issue preclusion, precludes a party from relitigating the same issue as was litigated in a previous case, even if that issue related to a different claim. *See Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1346–47 (Fed. Cir. 2022) (citing *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996)). Applying that doctrine requires that (1) the issue is the same as the one in the prior legal action; (2) the issue was actually litigated; (3) there was a valid and final judgment on the issue; and (4) the issue's determination was central to the previous judgment. *Id.* Collateral estoppel does not apply here because the issue in the District Court case was whether Ms. Monbo established the subject-matter jurisdiction of the District Court, not whether she satisfied the "interested party" standing requirement of this Court's bid protest jurisdiction.

Finally, judicial estoppel prevents a party from taking a position that is contrary to a position the party took in an earlier legal proceeding. *See Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996). Here, although Ms. Monbo tries to argue that the Government has impermissibly shifted its positions, this is a different case and a different procurement that necessarily entails different legal issues, so judicial estoppel does not apply. If anything, in the District Court case, it was Ms. Monbo who changed her position, arguing in her opposition "that she [was] not an 'interested party' because it was MGI, not she, who submitted the proposal at issue." *Monbo*, 2023 WL 8354885, at *3. Overall, Ms. Monbo's cursory attempts to counter the Government's argument do not persuade the Court that she has sufficiently alleged facts to

14

demonstrate she is an interested party. Thus, she has not shown statutory standing to bring this protest.

  **C. To the Extent Ms. Monbo Attempts to Litigate This Claim On Behalf of MGI As the Real Party in Interest, She Is In Violation of RCFC 83.1(a)(3).**

Another independent ground on which the Court can dismiss this case is that Ms. Monbo, who is not an attorney, is effectively representing a corporation in violation of RCFC 83.1(a)(3). Rule 83.1(a)(3) imposes limitations on pro se litigants. It provides that they may represent themselves or their immediate family members, "but [they] may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3).

Although Ms. Monbo brings this protest in her own name, as explained above, MGI is the real party in interest because MGI submitted the proposal. Any challenge to the FAA's decision vis-à-vis MGI's proposal must therefore be brought by MGI. *See* RCFC 17(a) ("An action must be prosecuted in the name of the real party in interest."); *see also Anchor Sav. Bank, FSB v. United States*, 121 Fed. Cl. 296, 313 (2015) (holding that RCFC 17 "ensur[es] that the proper plaintiff is prosecuting the claim, *i.e.,* that the plaintiff is the person who possesses the right to be enforced") (quoting *Mitchell Food Prods., Inc. v. United States*, 43 F. App'x 369, 369 (Fed. Cir. 2002)). Ms. Monbo, however, may not represent MGI because she is not an attorney. *See* RCFC 83.1(a)(3); *Talasila, Inc. v. United States*, 240 F.3d 1064, 1066 (Fed. Cir. 2001) ("[A corporation] must be represented by counsel in order to pursue its claims against the United States in the Court of Federal Claims.").

Pursuant to RCFC 41(b), her claim must therefore be dismissed. *See Indus. Supplies, LLC v. United States*, 144 Fed. Cl. 290, 293–94 (2019); *see also Fondel v. United States*, 178 F.3d 1313 (Fed. Cir. 1999) (unpublished table decision) (affirming dismissal when plaintiff "filed the complaint in his own name" but actually did so "on behalf of [a company]"); *Diaz v. United States*,

15

127 Fed. Cl. 664, 670 (2016) (dismissing case in accordance with Rule 83.1(a)(3) because "[o]n balance, the record suggests . . . that the actual offeror of the unsolicited proposal appears to have been" the corporation, "with [plaintiff] working in some capacity for" it), *aff'd*, 853 F.3d 1355 (Fed. Cir. 2017).

### D. Dismissal, Rather than Transfer, Is Proper.

Since this Court lacks jurisdiction, it has considered whether Ms. Monbo's Amended Complaint should be transferred to another federal court under 28 U.S.C. § 1631. Transfer is appropriate if the Court determines that a plaintiff could have brought her claims in the other court at the time she filed her complaint and that transfer is in the interest of justice. *See Zoltek Corp. v. United States*, 672 F.3d 1309, 1314 (Fed. Cir. 2012). Ms. Monbo cannot satisfy these factors.

Ms. Monbo seeks transfer to the United States District Court for the District of Columbia. *See* ECF No. 16 at 4. But a judge of that court has already determined that federal district courts lack subject-matter jurisdiction over bid protests generally. *See Monbo*, 2023 WL 8354885, at *2 ("Because her suit is a classic bid protest, this Court lacks jurisdiction to hear it."). Moreover, as explained above, exclusive jurisdiction to hear a bid protest, like this one, challenging a FAA procurement lies with ODRA pursuant to Congress' comprehensive scheme for administrative review. *See* 49 U.S.C. § 40110(d)(4); *Unisys Corp.*, 90 Fed. Cl. at 512. Thus, like this Court, the District Court for the District of Columbia would not have jurisdiction over Ms. Monbo's bid protest either. Accordingly, transfer is not warranted.

### IV. CONCLUSION

For these reasons, the Court **GRANTS** the Government's Motion to Dismiss (ECF No. 12) and **DISMISSES** Plaintiff's Amended Complaint (ECF No. 8) under RCFC 12(b)(1) for lack of jurisdiction or, in the alternative, failure to state a claim under RCFC 12(b)(6) and for violation of RCFC 83.1(a)(3). The Court additionally **DENIES** Plaintiff's Motion to Introduce Evidence of

COFC Jurisdiction (ECF No. 11).  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**


Dated: June 16, 2025                             */s/ Kathryn C. Davis*
                                                 KATHRYN C. DAVIS
                                                 Judge